**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **KESIENA TANI** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. **PJM 08-1950** |
| | * | |
| **ST. MARY'S COUNTY,** | * | |
| **MARYLAND, et al.** | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

As the Court noted in its prior Memorandum Opinion, *see Tani v. St. Mary's Cnty., Maryland, et al.*, Civil No. PJM 08-1950, 2011 WL 3821058, at *1 (D. Md. Aug. 25, 2011), this case involves *pro se* Plaintiff Kesiena Tani's allegations against various Maryland Counties, governmental departments, state police officers, sheriffs, and other officials.  Tani alleges that these Defendants violated his federal constitutional rights, including unlawful search and seizure and use of excessive force, and makes what appear to be related claims under Maryland common law.  The Court has dismissed all Defendants from the suit except four individuals—former St. Mary's County Sheriff David Zylak, St. Mary's County Deputy Sheriffs Todd Fleenor and John Kirkner, and Maryland State Police Officer Brian Cedar—and has also narrowed the claims against those individuals.

Pending before the Court are the remaining Defendants' dispositive motions.  For the following reasons, Cedar's Motion for Summary Judgment [Paper No. 81] is **GRANTED** and Zylak, Fleenor, and Kirkner's Renewed Motion for Summary Judgment [Paper No. 85] is **GRANTED** as to Zylak but **DEFERRED** as to Fleenor and Kirkner.

# I.

The Court previously summarized Tani's rambling allegations and Defendants' different

version of the facts as follows:

> On or about January 15, 2006, St. Mary's County Deputy Sheriffs Patrick Handy and Eva
> Snyder arrested Tani on suspicion of driving with an expired license and possession of
> drug paraphernalia.  Sometime after that, Tani filed complaints with the St. Mary's
> County Sheriff and the Maryland State Police, complaining that he had been harassed by
> St. Mary's County law enforcement officers.  After receiving no response to his
> complaints, Tani allegedly contacted former St. Mary's County Sheriff David Zylak, who
> purportedly told him never to contact his office again and that, if he did, Zylak would
> "lock [him] up and throw the keys away."

> On March 10, 2006, approximately one week after Tani's purported exchange with
> Zylak, St. Mary's County Deputy Sheriffs Todd Fleenor and John Kirkner arrived at
> Tani's home in Valley Lee, Maryland—allegedly without provocation—and demanded
> that he surrender his shotgun.  According to Tani, the purpose of their visit was to
> retaliate against him for making complaints against the County's law enforcement
> officers.

> Tani maintains that he told Fleenor and Kirkner that they could not enter his home
> without a warrant, after which the officers left the premises.  However, according to Tani,
> the officers later returned with backup—in his words, a "cavalry of overwhelming
> force"—and forcibly entered his home using teargas, guns, and explosives.  Tani alleges
> that he suffered gunshot wounds and other injuries during the raid, and that property
> belonging to him was seized and damaged.  Officers arrested Tani sometime in the early
> morning hours of March 11, 2006 and charged him with assault, reckless endangerment,
> disorderly conduct, resisting arrest, and failure to obey law enforcement.

> . . .

> [By contrast, Defendants state that] on the night of March 10, 2006, Tani got into an
> argument over rent money with Robert Wayne Wright, who apparently rented property
> from Tani.  After Tani purportedly pointed a gun at him and threatened to kill him,
> Wright called the police from Tani's home.  Deputies Fleenor and Kirkner responded to
> the call.  When they arrived at the property, they observed Tani holding a 12-gauge
> shotgun at the front door of the residence.  According to Defendants, Tani, who appeared
> to be intoxicated, told the officers that they could not enter his home without a warrant
> and then loaded a round into the chamber of his shotgun.  At that point, Defendants
> maintain, the officers called for backup and a seven-hour standoff between Tani and law
> enforcement ensued.

> Defendants maintain that, during the protracted standoff, the officers attempted—without
> success—to negotiate with Tani and convince him to exit the premises unarmed.

Ultimately, after Tani refused to comply with their requests, the officers entered the premises using non-lethal force, in the course of which Tani fired two rounds from his shotgun.  The officers managed to subdue Tani, forcibly removed him from the premises, and subsequently charged him with assault, reckless endangerment, disorderly conduct, resisting arrest, and failure to obey law enforcement.  At the time of his arrest, Tani allegedly had a blood alcohol level of 0.25.

All parties, including Tani, appear to agree that, at some point subsequent to his arrest, law enforcement transferred him to the Clifton T. Perkins Hospital Center, where he was found to be dangerous due to a mental disorder and incompetent to stand trial.  He was subsequently committed for inpatient care and treatment to the Maryland Department of Health and Mental Hygiene, where staff concluded that he might be suffering from a mental disorder and was "possibly not competent to stand trial."  Ultimately, on March 30, 2007, the criminal charges against Tani were dismissed. . . .

*Id.* at *1-2.

On July 22, 2008, Tani filed a 90-page complaint in the Circuit Court for Anne Arundel County essentially identical to the one he subsequently filed in this Court on July 28, 2008—the defendants are the same, the allegations are the same, even the wording is the same.  In September 2008, the defendants in Circuit Court filed dispositive motions.  Less than a month later, the Circuit Court granted with prejudice the motion to dismiss or for summary judgment filed by the Maryland State Police and its named individual officers, including Brian Cedar.  *See Tani v. St. Mary's Cnty., et al.*, No. 02-C-08-133202 (Md. Cir. Ct. Anne Arundel Cnty. Dec. 8, 2008).  Tani appealed.  In an opinion issued on June 17, 2010, the Court of Special Appeals affirmed the Circuit Court's decision.  *See Tani v. St. Mary's Cnty., et al.*, No. 2253 (Md. Ct. Spec. App. June 17, 2010).  The Court of Special Appeals found that Tani had failed to produce any evidence that the Maryland State Police defendants caused or abetted his alleged injuries. *Id.*

In this Court, the Defendants have also moved to dismiss Tani's Complaint.  On August 25, 2011, the Court issued a Memorandum Opinion and Order granting those motions except as to Zylak, Fleenor, Kirkner, and Cedar.  Eight of Tani's original fifteen counts remain pending

against these Defendants: Count I (excessive use of force), Count II (false arrest), Count III (false detention), Count V (unlawful search and seizure), Count VI (malicious conversion), Count VIII (malicious prosecution), Count X (conspiracy), and Count XI (negligent supervision). The Court directed the remaining Defendants to file renewed motions for summary judgment supported by sworn affidavits and other evidence.  Zylak, Fleenor, Kirkner, and Cedar's renewed motions, buttressed by supporting affidavits and other evidence, are now before the Court.

**II.**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in his favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court, however, must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).  "A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 522 (alteration in original) (internal quotation marks and citation omitted).  The mere existence of a "'scintilla of evidence'" is not enough to frustrate a motion for summary judgment. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 187 (4th Cir. 1999)).  Summary judgment is

appropriate "unless there is sufficient evidence favoring the nonmoving party for a jury to return

a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Although *pro se* pleadings are "held to less stringent standards than formal pleadings

drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), they "must still set forth

facts sufficient to withstand summary judgment." *Symeonidis v. Paxton Capital Group, Inc.*, 220

F. Supp. 2d 478, 480 n. 4 (D. Md. 2002) (citations omitted).

### III.

### A.

Cedar argues that summary judgment should be entered in his favor because Tani's

claims are barred by the doctrine of claim preclusion, and because in any case, Tani has failed to

adduce evidence showing that Cedar caused the alleged injuries.  The Court agrees.

The doctrine of claim preclusion, or *res judicata*, "bars a party from relitigating a claim

that was decided or could have been decided in an original suit."  *Laurel Sand & Gravel, Inc. v.

Wilson*, 519 F.3d 156, 161-62 (4th Cir. 2008) (citing *Pueschel v. United States*, 369 F.3d 345,

355 (4th Cir. 2004)).  A judgment rendered in Maryland state court has preclusive effect if: (1)

the parties in the instant case are the same; (2) the claim presented in the instant case is identical

to the one determined in the prior adjudication; and (3) there has been a final judgment on the

merits.  *Id.* at 162 (citation omitted).  The decision of the Circuit Court for Anne Arundel

County, affirmed on appeal, satisfies all three requirements.  Tani brought suit in state court

against the same defendants, including Cedar.  There, he alleged the exact same causes of action

against Cedar.  And the Circuit Court's decision rejecting Tani's claims against the Maryland

State Police defendants was a final judgment upheld by the Court of Special Appeals.

Accordingly, Tani's claims against Cedar are barred.

Even if claim preclusion did not apply, Cedar would still be entitled to summary judgment because Tani has produced no evidence to support his claims.  There is no evidence that Cedar participated in the events on March 10-11, 2006 that gave rise to this cause of action.  Indeed, Trooper Andrew Rossignol states in his uncontroverted affidavit that Cedar was "never present on the scene[;] nor did he assign or direct any police activities there."  Rossignol avers that all State Police personnel were tasked with maintaining an outer perimeter around Tani's property and did not join the effort to take Tani into custody.  Tani's vague assertions about Cedar being involved in the harassment he suffered *before* March 10 are immaterial.  The Court will enter summary judgment in Cedar's favor on all counts.

## B.

Zylak also submits that Tani has produced no evidence connecting him to the alleged injuries.  The Court so finds and grants summary judgment in favor of Zylak on all counts.

The Complaint refers to the officers who Tani claims stormed his home and unlawfully arrested him as Zylak's "Thugs" but is otherwise silent as to the role Zylak played in the events on March 10-11, 2006.  Tani does not claim that Zylak participated directly in the effort to take him into custody or later prosecute him.  Corporal John Shoemaker affirms in his affidavit that Zylak was not present at the scene, and Tani does not contest the point.  For most of his claims, therefore, the only possible theory under which Zylak could be held responsible is supervisory liability.  *See Shaw v. Stroud*, 13 F.3d 791, 798-99 (4th Cir. 1994); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit).  To establish supervisory liability, a plaintiff must demonstrate: (1) the defendant had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and

unreasonable risk of constitutional injury; (2) the defendant's response was so inadequate as to show tacit authorization or deliberate indifference to the conduct; and (3) there was an affirmative causal link between defendant's action or inaction and plaintiff's constitutional injury. *Shaw*, 13 F.3d at 799 (citations omitted).  Here, Tani at most intimates that Zylak might have been behind the alleged harms he suffered, but fails to allege much less provide evidence to show the necessary elements for supervisory liability.  He never asserts that Zylak knew his Deputies in the Sheriff's office were targeting Tani.  Nor does Tani claim that Zylak specifically authorized the raid or was deliberately indifferent to his subordinates' conduct.  Tani, moreover, never specifically alleges a causal connection between Zylak and the injuries he sustained.  Simply branding the officers who arrested him as Zylak's "Thugs" does not suffice to survive summary judgment.  Zylak is entitled to judgment as a matter of law as to Count I (excessive use of force), Count II (false arrest), Count III( false detention), Count V (unlawful search and seizure), Count VI (malicious conversion), and Count VIII (malicious prosecution).

The deficiency in Tani's allegations and total lack of supporting evidence also doom his conspiracy and negligent supervision claims.  With respect to the purported conspiracy, Tani has failed to show that there was any agreement or understanding between Zylak and the officers who caused the alleged injuries. *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005) (setting forth requirements to state a claim for civil conspiracy).  Because Tani has not produced evidence "to prove an agreement . . . to engage in unlawful activity," Zylak is entitled to "summary judgment" on Count X.  *Electronics Store, Inc. v. Cellco P'ship*, 732 A.2d 980, 993-94 (Md. App. 1999).  As for negligent supervision, Tani asserts that the Counties' law enforcement personnel have a history of civil rights violations.  Yet Tani has not shown that Zylak either in fact supervised the Deputies or, if he did not, that he failed to exercise proper

oversight, or that whatever Zylak may have done proximately caused his injuries.  *Williams v. Wicmico Cnty. Bd. of Educ.*, No. WMN-10-3582, 2011 WL 3022300, at *11 (D. Md. July 21, 2011) (setting forth requirements to state a claim for negligent supervision).  Absent evidence to support these elements of Tani's claim, beyond Tani's mere surmise, Zylak is entitled to judgment as a matter of law on Count XI.

**C.**

While the Court is also skeptical of Tani's allegations against Fleenor and Kirkner, those claims, at least at this juncture, stand in a different light.  Tani maintains that on March 10, 2006 Fleenor and Kirkner arrived at his home, knocked on his door, and demanded without justification that he turn over a shotgun in his possession.  After he refused and insisted that they produce a valid warrant, Fleenor and Kirkner left and allegedly returned a couple hours later with a "cavalry of overwhelming force."

Fleenor and Kirkner attest to a very different set of events in support of their motion for summary judgment.  In his affidavit, Fleenor avers that he responded to a call for a disturbance and joined Kirkner in front of Tani's residence.  Fleenor states that he heard Tani "rack" a round of ammunition into a shotgun inside the home after which Fleenor retreated behind a parked car where he called for additional units and the Emergency Services Team.  According to Fleenor, the Calvert County Special Operations Team was also called in, and after being deployed, fired chemical irritant into Tani's home and used explosives to breach the front door.  When Tani finally appeared, members of both Teams put him in custody.  "At no time did I use any force against Tani," Fleenor affirms, "and at no time did I enter his apartment or seize items therefrom."  Nor did Fleenor "initiate or continue the prosecution of Tani."  Kirkner provides a similar account in his affidavit.  Kirkner states that he took cover with Fleenor behind a parked

vehicle after the latter yelled that Tani had chambered a round of ammunition.  Kirkner avers

that he "remained [stationed] on the perimeter of the scene" until Tani was arrested.  "At no time

did I use any force against Tani," Kirkner emphasizes, adding that he also "did not enter Tani's

residence," "remove any items therefrom," or file "charges against him."  Fleenor and Kirkner's

version of events is corroborated by police reports they completed shortly after the incident.

      In response, Tani adamantly denies that he ever brought a shotgun to the front door of his

house and loaded it.  The shotgun, he contends, was stored in his bedroom during the whole

episode.  Tani suggests that Fleenor mistook the noise of the door being bolted for the sound of a

firearm being loaded, and further questions whether Fleenor could identify that precise sound

from where he stood outside.  Indeed, Tani declares that the deputies fabricated their stories and

the police reports.

      Tani, however, has not properly rebutted the deputies' testimony that they never used

force against him, entered his home, or otherwise caused him injury.  As the Court has more than

once reminded Tani, he cannot rely solely on his own simple assertions of unlawful conduct.  He

has presented several photographs that purportedly represent damage to his house, various court

documents, lists of items he claims were taken from his home, and news articles.  But these

documents do not necessarily implicate liability on the part of Fleenor and Kirkner.  To stave off

summary judgment, Tani must raise a genuine dispute about Fleenor and Kirkner's involvement,

i.e., one upon which a trier of fact, looking at the evidence proffered, could return a verdict in his

favor on the various claims against those Deputy Sheriffs.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  To do so, Tani must provide more than just words in a legal brief.  *Id.*;

FED. R. CIV. P. 56(c).  He must file an affidavit under penalties of perjury,[1] affirming his version

---

[1] Under penalties of perjury means that Tani must expressly declare and affirm, under penalties of perjury, that certain alleged facts are true.

of Fleenor and Kirkner's involvement in his arrest, the search of his house, his prosecution, and the conspiracy to harm him.  Tani must file this affidavit within **20 DAYS**.  If he fails to provide an affidavit or if it does not address these issues with sufficient specificity, the Court may grant summary judgment in favor of Fleenor and/or Kirkner.[2]  The Court has given Tani ample opportunity as a *pro se* litigant to make his case but it will not prolong this action indefinitely.

## IV.

For the foregoing reasons, Cedar's Motion for Summary Judgment is **GRANTED** and Zylak, Fleenor, and Kirkner's Renewed Motion for Summary Judgment is **GRANTED** as to Zylak but **DEFERRED** as to Fleenor and Kirkner.  Tani shall have **20 DAYS** to file an affidavit in support of his claims against Fleenor and Kirkner, after which the Court will determine whether this suit will go forward.

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**June 7, 2012**

---

[2] The Court again finds it premature at this stage to determine whether Fleenor and Kirkner are entitled to the affirmative defense of qualified immunity as to Tani's federal and state claims. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982); Md. Code. Ann., Cts. & Jud. Proc. § 5-522(b).